UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEITH HAZELWOOD,

    Plaintiff,

v.

BAYVIEW LOAN SERVICING, LLC, et al.,

    Defendants.

Case No. 1:20-cv-726

Dlott, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Through counsel, Plaintiff Keith Hazelwood initiated this lawsuit on September 15, 2020 against Defendant Bayview Loan Servicing, LLC ("Bayview") and JPMorgan Chase Bank, N.A. ("Chase"). Currently pending is Defendant Bayview's motion to dismiss, which has been referred to the undersigned magistrate judge for preliminary consideration. (Doc. 2). Pursuant to that referral, the undersigned now recommends the dismissal of two of Plaintiff's four claims.

**I.    Standard of Review**

In evaluating the pending motion under Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). At the same time, this Court

> need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir.

> 2000). To state a valid claim, a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005), *cert. denied,* 547 U.S. 1111, 126 S. Ct. 1911, 164 L.Ed.2d 663 (2006).

*Id.*, 508 F.3d at 336–37. While the determination of whether Plaintiff's allegations state any claim rests primarily upon the allegations of its complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (internal quotation and citation omitted); *accord Luis v. Zang*, 533 F.3d 619, 632 (6th Cir. 2016). Without converting Bayview's motion to one for summary judgment, the undersigned considers the allegations in the instant complaint and the 219 pages of exhibits attached thereto. (*See* Doc. 1).

## II. Background and Key Allegations

Plaintiff's complaint concerns residential property located at 3906 Riley Street, South Lebanon, Ohio ("the Property"). (Doc. 1 at ¶ 1). Hazelwood alleges that he purchased the Property with his now ex-wife, non-party Virginia Hazelwood, to be their primary residence at the time of purchase. Hazelwood and his ex-wife executed a mortgage on the Property in July 2005 ("the Loan"). Defendant JPMorgan Chase Bank, N.A. ("Chase") serviced the Loan until Chase transferred servicing rights to Bayview effective on or about March 1, 2018.(Doc. 1 at ¶¶ 2, 5).

At some point after purchasing the Property, Plaintiff divorced Virginia Hazelwood and moved to Fort Thomas, Kentucky, where he lives with his current wife, non-party Lori Hazelwood. (Doc. 11 at ¶ 20). Plaintiff alleges that he notified Chase of his move "and received correspondence regarding the Loan from Chase for many years" at his Kentucky

address. (Doc. 1 at ¶ 21). Although servicing of the loan transferred from Chase to Bayview on or around March 1, 2018, Hazelwood alleges that he never received notice of that transfer because it was mailed to the Property in Ohio instead of to his Kentucky address. (Doc. 1 at ¶¶ 23-24). Plaintiff alleges that he made his usual electronic payments of the Loan to Chase on or around the 23rd day of each month, for the payments due April 1 through September 1 of 2018, through the bill payment feature of his checking account. (*Id*. at ¶ 28).

Plaintiff alleges that he first received notice that his payments had not been received through a letter dated September 18, 2018 from a law firm retained by Bayview to initiate a foreclosure action. (*Id*. at ¶ 29). The September 18, 2018 letter was mailed to Plaintiff in Kentucky. (*Id*. at ¶ 30). On September 19, 2018, Bayview filed a foreclosure action against Plaintiff in state court. (*Id.* at ¶ 31). Thereafter, Plaintiff received a letter from Chase dated September 26, 2018 at his Kentucky address, stating that a single mortgage payment of $764.48 had been received but was being returned. (*Id*. at ¶ 33). Plaintiff notified Chase and Bayview in writing on September 26, 2018 that he had not received notice of the transfer, had remitted timely payments, and that those payments had not been returned. In response, Chase maintained that it had forwarded Plaintiff's April and May 2018 payments to Bayview, and returned payments from June through September to Plaintiff. (*Id*. at ¶ 35).

On October 1, 2018, Hazelwood received a letter from Bayview's foreclosure counsel demanding a total of $8,091.33 to reinstate the loan, consisting of six allegedly "missed" payments (April through September 2018), inspections, and foreclosure fees.

3

(*Id.* at ¶ 36). In correspondence from Bayview dated October 31, 2018, Plaintiff alleges that Bayview falsely claimed that Plaintiff himself had sent documentation to Bayview in June 2018, that notice of the loan transfer had been mailed to Plaintiff in Kentucky, and that Bayview did not receive the May 2018 payment. (*Id.* at ¶ 37). Shortly before receiving the October 31, 2018 correspondence from Bayview, Plaintiff retained counsel. (*Id.* at ¶ 39).

Plaintiff also asserts that Bayview failed to comply with a legal requirement that it send Plaintiff a Flex Modification Trial Period Plan Solicitation offer at the required time, prior to initiating foreclosure. (*Id.* at ¶¶ 42-44). Bayview claimed to have sent an April 10, 2019 Flex Modification, but no copy was received prior to April 19, 2019. Plaintiff made the Flex Modification payments for May, June and July 1, 2019 on May 31, 2019, but Bayview again allegedly failed to properly apply them and instead submitted new Flex Modification offers dated June 7, 2019 and September 13, 2019. (*Id.* at ¶¶ 45-47).

On September 24, 2019, after reconciling the prior trial plan payments, Bayview sent a permanent modification offer ("the Modification") that required the first payment to be made before August 1, 2019, *prior to* the date of the offer. The permanent Modification increased the amount due on the Loan and included foreclosure costs. (*Id.* at ¶ 48). Represented by counsel at the time, Plaintiff alleges he "promptly accepted that permanent modification" and returned it to Bayview's foreclosure counsel with a check that covered August through October 2019 payments. (*Id.* at ¶ 49). However, Plaintiff alleges that Bayview failed to return a fully executed copy of the Modification and has not filed it with the Warren County, Ohio Recorder. (*Id.* at ¶ 50).

4

On or around July 23, 2020, Plaintiff sent a "Notice of Error" ("NOE") that listed seventeen errors allegedly made by Bayview in servicing the loan. Bayview acknowledged receipt of the Notice of Error on August 5, 2020. (*Id.* at ¶¶ 51, 53). Approximately two weeks later, Plaintiff sold the Property and paid off the Loan including the non-applied payments from March, April and May 2018 and nearly $4,000 in allegedly improper foreclosure fees. (*Id.* at ¶ 54). On September 15, 2020, Plaintiff filed this lawsuit, alleging breach of contract, a failure to respond to the NOE, violations of the Ohio Residential Mortgage Lending Act and the Ohio Consumer Sales Practices Act. On December 7, 2020, Bayview moved to dismiss under Rule 12(b)(6), Fed. R. Civ. P.

III. Analysis

A. Plaintiff's Breach of Contract Claim

Defendant Bayview first argues persuasively that it is entitled to dismissal of the breach of contract claim under Ohio's voluntary payment doctrine, based upon Plaintiff's acceptance of the Loan Modification and payment in full of the Loan when he sold the Property. The doctrine, which is an affirmative defense, holds that one who voluntarily pays another with full knowledge of the facts is not entitled to recovery. *See Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 103, 425 N.E.2d 952, 956 (1980). Described as an "ancient" doctrine adopted by many states, the voluntary payment doctrine has common-law roots derived from English law. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667 (7th Cir. 2001). In a description that appears equally applicable to Ohio's version of the doctrine, the Seventh Circuit explained the genesis and history of the doctrine as applied in Illinois. The "reason for the rule" is

5

> quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat ... each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence or under a reservation of right to litigate the claim, and afterward sue to recover the amount paid.

*Id.*, 262 F.3d 663, 668 (quoting *Smith v Prime Cable of Chicago*, 276 Ill. App.3d 843, 658 N.E.2d 1325 (Ill Ct. App. 1st Dist., 1995) (additional quotation omitted)).

Ohio's version of the same doctrine was summarized in *Scott v. Fairbanks Capital Corp.,* 284 F.Supp.2d 880, 894 (S.D. Ohio 2003).

> As articulated by the Ohio Supreme Court: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *State ex rel. Dickman v. Defenbacher,* 151 Ohio St. 391, 395, 86 N.E.2d 5, 7 (1949). Simply stated, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Randazzo v. Harris Bank Palatine,* 262 F.3d 663, 667 (7th Cir. 2001); *see Nationwide Life Ins. Co. v. Myers,* 67 Ohio App.2d 98, 425 N.E.2d 952 (9th Dist. 1980), citing *Cincinnati v. Gaslight & Coke Co.,* 53 Ohio St. 278, 41 N.E. 239 (1895), paragraph three of the syllabus ("A payment made by reason of a wrong construction of the terms of a contract, is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back."); *Stone v. Mellon Mortg. Co.,* 771 So.2d 451, 458 (Ala. 2000) ("It is well settled that money voluntarily paid under a mistake of fact may be recovered. However, it is equally well settled that money voluntarily paid with full knowledge of the facts but by reason of mistake of law cannot be recovered").

*Id.*

In *Scott*, the court declined to apply Ohio's version of the doctrine to a Fair Debt Collection Practices Act claim, overruling objections to a motion to amend plaintiffs'

6

complaint, on grounds that the state law doctrine "appears to contradict the plain language of the FDCPA." *Id.,* 284 F. Supp.2d at 894. The plaintiffs had argued that they only entered into an agreement with the defendant to pay certain fees based upon the defendant's false statements regarding the amount of debt owed, and only later learned of the false statements. The court reasoned: "It would defy logic to conclude that the FDCPA would protect consumers who challenge … false statements in court prior to paying, yet preclude claims by consumers who, after paying the debt based on the misleading statements, realized the falsehoods." *Id.* at 895.[1] Still, the court explicitly held that it would allow the defendant to raise the same defense anew as to any state law claims "in a subsequent motion to dismiss or for summary judgment." *Id.*

Under Rule 12(b)(6), a court will deny a motion based upon the voluntary payment doctrine if any issue of fact remains that requires discovery regarding the plaintiff's knowledge of the facts prior to the voluntary payment, because the doctrine does not apply in the event of a "mistake in fact" and has many exceptions, such as for payments made under duress or based on fraud (which are deemed not to be "voluntary"). *See*, *e.g.*, *Arlington Video Prods, Inc. v. Fifth Third Bancorp.*, 2008 WL 1990355 at *6 (S.D. Ohio, May 1, 2008) (deferring ruling on voluntary payment doctrine "pending further factual development of the record."). Here, Plaintiff argues that this Court should deny Defendant's motion because there is "no allegation in Plaintiff's Complaint that he had full

---

[1] It is not clear to the undersigned that the facts presented in *Scott* would cause a conflict between the doctrine and the FDCPA. Arguably, Ohio's voluntary payment doctrine would not apply to a payment of a sum that was based upon "false statements" discovered *after* paying the debt, because a payment made in reliance of those false statements could be considered to have been made under duress or through fraud, or alternatively, would have been made based upon an "error of fact" without full knowledge of the debt owed at the time of payment.

7

knowledge of the facts as to the payment applications **at all times**." (Doc. 16 at 6, emphasis added). Plaintiff points out that the NOE mailed to Bayview by Plaintiff's counsel *after* the Modification demonstrates that Plaintiff continued to challenge whether the contractual payments for April, May and June 2018 had been properly applied. (*See* Doc. 1-13). He argues that the question of his "scienter in entering the Loan Modification is irrelevant" because the decision to sign the Modification "was a good faith attempt to mitigate his perceived damages… which is in direct conflict with the imposition of the voluntary payment doctrine." (Doc. 16 at 6).

However, Plaintiff misunderstands the voluntary payment doctrine, which is founded on the concept that litigation should precede payment. Neither the fact that Bayview had initiated foreclosure proceedings at the time nor the fact that Plaintiff was attempting to mitigate his damages is sufficient to preclude application of the doctrine in this case.

> Ordinarily, payment made pursuant to threat of litigation or to prevent the bringing of a legal action is regarded as voluntary … *Helmick v. Carter* (1912), 171 Ill.App. 25 (allegation of threat that foreclosure proceedings would be commenced is not sufficient to constitute duress)) for the reason that an ample remedy by way of defense to the suit would exist and because no loss could occur until the lawsuit was instituted and proceeded to judgment. (See generally 66 Am.Jur.2d *Restitution & Implied Contracts* § 109, at 1047 (1973) ("One cannot be heard to say that he had the law with him but feared to meet his adversary in court.").)

*Smith v. Prime Cable of Chicago*, 658 N.E.2d at 1332.

Plaintiff's understanding of all facts "at all times" is not the standard. The relevant issue is whether Plaintiff believed that he did not owe the full debt charged by Bayview at the time of payment, but chose to voluntarily pay the debt anyway. At the time Plaintiff

8

entered into the Loan Modification, he was represented by counsel and already had challenged Bayview's failure to apply the disputed payments and addition of foreclosure fees. (Doc. 1 at ¶ 39). The NOE lays out many of the same facts. In addition, after serving Bayview with the NOE (and less than a month prior to filing suit), Plaintiff sold the Property and paid off the Loan "including the three non-applied payments from March, April, May of 2018 and the roughly $4,000.00 inflated loan balance due to improper foreclosure fees." (Doc. 1 at ¶ 54). Because Plaintiff knowingly and voluntarily paid off the Loan in its entirety (including the challenged payments), he cannot claim that he was mistaken as to the facts (including his claim of overcharges) prior to paying off the debt.

In short, it is clear from the face of the Complaint that Plaintiff made a calculated decision, with the advice of counsel, to enter into and make payments under the Modification, notwithstanding his claims over disputed payments and foreclosure fees. He reaffirmed that decision when he sold the Property and paid off the Loan. The fact that he sought to mitigate damages rather than defend the foreclosure action in court, or that he or his attorney misperceived the legal consequences of the decisions to enter into the Modification and pay off the Loan, does not bar the application of the doctrine because a "mistake in law" is irrelevant. In other words, under Ohio law, Plaintiff is now bound by the voluntary payment doctrine from recovering the same disputed amounts that he voluntarily paid. "The Ohio rule may be a harsh doctrine, but we have lived with it for a long time."[2] *Nationwide Life Ins. Co.*, 425 N.E.2d at 956.

---

[2] Given the current cost of litigation and the often required course of action to mitigate one's damages, maybe it is time to revisit this "harsh doctrine."

Bayview argues that in addition to barring Plaintiff's breach of contract claim, the voluntary payment doctrine bars Plaintiff's state law claims under the Ohio Residential Mortgage Lending Act and under the Ohio Consumer Sales Practices Act. However, the voluntary payment doctrine is narrowly construed and has many exceptions. As explained above, the doctrine historically relates to the voluntary payment of a demand for payment of a fixed sum, such as when a disputed amount is paid under a contract (here a loan). Bayview has not offered any substantive argument, nor has it cited to any case law, to support its conclusory assertion that the doctrine should be broadly applied to claims for statutory damages under the referenced Ohio statutes. Therefore, the undersigned declines to recommend dismissal of those claims at this time.

### B. Plaintiff's RESPA Claim

Plaintiff's second cause of action against Bayview rests on his allegation that Bayview failed to respond to his NOE as required under 12 C.F.R. § 1024.35 of Regulation X of the Real Estate Settlement Procedures Act ("RESPA"). Bayview implicitly concedes that the voluntary payment doctrine does not apply to Plaintiff's NOE claim under RESPA. (*See* Doc. 12 at 2, arguing that "[w]ith one exception," Plaintiff's claims are defeated by the doctrine).

### 1. Bayview's Factual Assertion that its Response was Sufficient

Pursuant to 12 U.S.C. § 2605(e)(2), upon a receipt of a valid NOE, a servicer can respond in one of three ways: (1) correct the account; (2) conduct an investigation and provide the borrower with a written explanation or clarification as to why the servicer believes the account is correct; or (3) conduct an investigation and provide the borrower

10

with a written explanation that either contains requested information or explains why the information cannot be obtained or provided. *Marais v. Chase Home Fin., LLC*, 24 F. Supp.3d 712, 721 (S.D. Ohio 2014). Bayview first argues that it is entitled to dismissal of this claim on the merits, because it provided a written response to the NOE on or about October 2, 2020, after Plaintiff filed this lawsuit. Bayview includes a copy of the response as an exhibit to its motion to dismiss, and states that the response advised Plaintiff, in part, that it had notice only of the Property address and not of Plaintiff's Kentucky address. Because Bayview's evidence of its response is comprised of evidentiary exhibits which may not be reviewed in the context of a Rule 12(b)(6) motion to dismiss, the undersigned declines to consider Bayview's response to the NOE at this time. However, Defendant remains free to renew this argument following discovery, at the summary judgment stage.

### 2. Whether a Private Right of Action Exists Under 12 C.F.R. § 1024.35[3]

Bayview next argues that there is no private right of action for violating the NOE rule set forth in 12 C.F.R. § 1024.35. Plaintiff argues to the contrary, maintaining that a private right of action exists based upon the statutory authority under which the Consumer Financial Protection Bureau ("CFPB") enacted the NOE rule as part of Regulation X of the Mortgage Servicing Rules. Regulation X is comprised of a collection of rules promulgated under both the Dodd-Frank Act and the Real Estate Settlement Procedures

---

[3]Bayview briefly argues that "regardless of whether a private cause of action exists under 12 C.F.R. § 1024.35, Hazelwood's NOE relating of the Fannie Mae guidelines fails because the guidelines are not intended to benefit borrowers like Hazelwood." (Doc. 17 at 4; *see also* Doc. 12 at 10). However, in the Ohio cases on which Bayview relies, the borrowers attempted to file suit as third-party beneficiaries; the cases (which preceded the enactment of 12 C.F.R. §1204.35) did not involve a borrower who proceeds under section 6 of RESPA.

11

Act ("RESPA").  *See generally*, 12 C.F.R. Ch. X, Pt. 1024, Subpt C (§§1024.30 – 1024.41).

> RESPA is a consumer protection statute that requires loan servicers to provide timely written responses to borrowers under certain circumstances. 12 U.S.C. § 2605. The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) is a Consumer Financial Protection Bureau regulation promulgated pursuant to section 1022(b) of the Dodd-Frank Act, 12 U.S.C. § 5512(b), and RESPA, 12 U.S.C. § 2601, *et seq*.  Regulation X became effective on January 10, 2014. 78 FR 10696-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). 12 C.F.R. § 1024.35 outlines error resolution procedures by which a borrower may notify a servicer of errors on its account, triggering a response by the servicer.

*Smallwood v. Bank of America*, 2015 WL 7736876, at *5 (S.D. Ohio 2015).

While a growing majority of federal courts have determined that a private cause of action does exist for the NOE rule set forth in § 1024.35 of Regulation X, the circuits are split on the issue and the Sixth Circuit has not yet offered any guidance.  To support its position that no private right of action exists, Bayview cites to two unpublished decisions from district courts within this circuit.  In *Watts v. Mortgage Bridge Solutions*, LLC, 2016 WL 8188768 at *6 (E.D. Mich. Dec. 7, 2016), the court granted dismissal of unspecified RESPA claims on multiple grounds, albeit without specific discussion of 12 C.F.R. § 1204.35.  Citing an earlier case that held that no private right of action exists under another Regulation X rule, § 1204.40, the *Watts* court broadly suggested that a private cause of action <u>only</u> exists under § 1024.41 (also within Regulation X) because that rule alone references the private right of action available in section 6 of RESPA.  *Id.* (citing *Schmidt v. Pennymac Loan Services*, 2015 WL 2405571 at **6-11 (E.D. Mich. May 20, 2015).  In the second case on which Bayview relies, *Roes v. Specialized Loan Servicing, LLC,* 2017 WL 3636543, 2018 U.S. Dist. LEXIS 127486 at * 6 (E.D. Tenn. July 31, 2018),

12

the court specifically held that § 1024.35 does not provide a private cause of action, but with virtually no analysis and no acknowledgement of the significant amount of contrary authority.

There is no *explicit* reference to a private right of action contained in the language of the NOE rule. By contrast, and as noted by *Watts*, the rule contained in § 1024.41 contains an explicit reference to the private right of action codified in section 6 of RESPA. *See* 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))."). As another court put it in looking at the NOE rule, "[t]he difficulty in determining whether a private cause of action exists for violations of 12 C.F.R. § 1024.35 results from the absence of any reference to a private cause of action in 12 C.F.R. § 1024.35, the explicit reference to the private cause of action under 12 U.S.C. § 2605(f) in 12 C.F.R. § 1024.41, and the scope of [section 6 of RESPA,] 12 U.S.C. § 2605(f), which provides borrowers a cause of action against "[w]however fails to comply with any provision of *this section*." 12 U.S.C. § 2605(f) (emphasis added)." *Lucas v. New Penn Financial, LLC*, 2019 WL 404033, at *4 (D. Mass. Jan. 31, 2019) (collecting and discussing cases).

Having reviewed the conflicting case law, the undersigned finds the majority view to be more persuasive than *Watts* and *Roes*, considering the legislative history of the Dodd-Frank Act and regulatory history of Regulation X. *See generally, Landau v. RoundPoint Mortgage Serv. Corp.*, 925 F.3d 1365, 1368 n.1 (11th Cir. 2019); *In re Coppola*, 596 B.R. 140, 153 n. 49 (D.N.J. 2018) (collecting cases). As mentioned, the

CFPB promulgated multiple Regulation X rules at the same time, which makes a comparative analysis of related rules and associated commentary particularly instructive.

> When courts must determine whether statutes or regulations convey private rights of action, a few general principles apply. "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Further, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291, 121 S.Ct. 1511. And, "[w]hen an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is plainly erroneous or inconsistent with the regulation.'"

*Vance v. Wells Fargo Bank, N.A.*, 291 F. Supp.3d 769, 771-772 (W.D. Va. 2018) (quoting *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 613, 133 S.Ct. 1326 (2013) (additional quotation omitted)). In *Vance*, the court held that a private right of action exists for violations of § 1024.39 based upon the regulatory history and CFPB's own interpretation of that rule. *Id.* at 772-773.

Including § 1024.39, the CFPB invoked the same statutory authority for a total of five rules initially proposed to be included in Regulation X. The set of five rules also includes the NOE rule at issue in this case. The CFPB specifically invoked 12 U.S.C. §§ 2605(k)(1) and (j)(3), as well as section 19(a), as the statutory text on which the five rules were based:

> *"Loss mitigation option."* Pursuant to the Bureau's authorities under RESPA sections 6(k)(1)(E), 6(j)(3), and 19(a), the Bureau proposed rules on error resolution (proposed § 1024.35), information management (proposed §1024.38), early intervention (proposed § 1024.39), continuity of contact (proposed § 1024.40), and loss mitigation (proposed § 1024.41) that would have set forth servicer duties with respect to "Loss mitigation options."

*See* 78 FR at 10724.  Sections 6(k)(1) and 6(j)(3) are subsections of section 6 of RESP. As noted, in subsection 6(f) of RESPA, Congress expressly created a private cause of action for any violations of "this section," meaning any part of section 6 or the rules enacted under its authority.

The CFPB received and addressed numerous comments about the five referenced rules prior to finalizing them.  For example, the CFPB addressed specific concerns by the servicing industry that two of the proposed rules, 12 C.F.R. §§ 1024.38 and 1024.40, would create increased litigation risk if enacted under section 6 of RESPA as proposed, precisely because 12 U.S.C. § 2605(f) provides borrowers a private right of action to enforce regulations.  *See* 78 Fed. Reg. at 10714 n.64 ("The Bureau notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations.").  In direct response to those concerns, the CFPB modified the final versions of §§ 1024.38 and 1024.40 to state that it would rely upon alternate authority (as opposed to section 6 of RESPA) in order to avoid private liability for violations of those two rules.  *See*, *e.g.*, *Schmidt v. Pennymac*, 106 F. Supp.3d at 870-871 (reasoning that private liability is not compatible with § 1024.40 because the CFPB explicitly dropped its reliance on section 6 in the final version of that rule; *see also* 78 FR at 10778 (stating that the CFPB "no longer relies on its authorities under section 6 of RESPA to issue § 1024.38).  Notably, however, the CFPB did <u>not</u> alter its explicit reliance on section 6 as the basis of its authority to enact the other three final rules, including §§ 1024.35 and 1024.36.

The comments received on §§ 1024.35 add to the conclusion that both the CFPB and the servicing industry well understood that a private right of action would exist for violations of the new NOE rule. Consistent with its clearly expressed intent to put Notices of Error and Requests for Information on par with Qualified Written Requests, the CFPB rejected commentators' requests to adopt exceptions for complying with §§ 1024.35 or 1024.36, because "those provisions build upon the existing Qualified Written Request procedures," and providing an exemption to either of those new rules "would have removed a currently existing consumer protection." 78 FR at 10720-21.

On the other hand, the CFPB did modify the proposed version of § 1024.35 in one key respect in order to reduce the amount of private litigation. The proposed rule would have allowed both oral and written notices of error. Industry commentators sought to limit the applicability of § 1024.35 to written NOEs, which they maintained offered additional clarity and certainty, again based upon concerns that the inclusion of oral NOEs would invite undue litigation risk. "Absent a written record, commenters said, servicers would need to record conversations with borrowers to minimize the significant litigation risk." 78 FR at 10738. The CFPB therefore modified the final rule to clarify that it would apply only to *written* Notices of Error. While borrowers remain free to orally notify servicers of errors, the CFPB explained that servicers only would be required to respond under § 1024.38 (and not § 1024.35) for such oral notices of error. As discussed above, that limitation of the final NOE rule reduced litigation risk because unlike § 1024.35 (which falls under section 6), the final version of § 1024.38 was excluded from section 6 and does not permit a private cause of action.

16

### 3. Ohio RMLA Claim

Bayview's motion to dismiss fails to directly address Plaintiff's Ohio Residential Mortgage Lending Act claim, other than through a conclusory assertion that the voluntary payment doctrine bars all state claims. Plaintiff argues that Bayview became subject to the Ohio RMLA on December 19, 2018, when Ohio's governor signed into law House Bill 489 to broaden the scope of the RMLA to include mortgage servicers. Bayview's reply memorandum does not address Plaintiff's response in opposition to dismissal of this claim. It is Bayview's burden to show that dismissal under Rule 12(b)(6) is appropriate. Because Bayview has failed to carry that burden, its motion to dismiss Plaintiff's RMLA claim should be denied.

### 4. Statute of Limitations Defense for Ohio CSPA Claim

Bayview argues that Plaintiff's claim under the Ohio Consumer Sales Practices Act ("CPSA") is time-barred because under Ohio R.C. § 1345.10(C), "an action under R.C. 1345.01 to 1345.13 may not be brought more than two years after the occurrence of the violation which is the subject of suit, or no more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later." *Id*. In his complaint, Plaintiff alleges that Bayview's conduct "as alleged in the preceding paragraphs" violates the CSPA. (Doc. 1 at ¶98). However, nearly all of the factual allegations relate to Bayview's failure to account for payments in the spring of 2018, failing to offer a modification prior to beginning foreclosure proceedings, and sending notices to the Property instead of to Plaintiff's Kentucky residence. (*See* Doc. 1 at ¶¶ 22, 93).

17

Defendant therefore argues that any CSPA claim based upon conduct that occurred prior to September 15, 2018 is time-barred.

In response, Plaintiff argues that "all actions by [Bayview], including the potential RESPA violations, could potentially be violations of the CSPA." (Doc. 16 at 15). But Plaintiff does not identify precisely what actions Bayview took (or failed to take) in violation of the CSPA that occurred within the limitations period. A fair reading of the complaint as currently drafted suggests that virtually all of the RESPA claims also are grounded in Bayview's alleged failure to account of the April, May, and June 2018 payments and failure to offer a loan modification prior to beginning foreclosure proceedings. (Complaint at ¶ 79). That conduct clearly occurred prior to September 15, 2018 and therefore would not fall within the limitations period.

Appearing to acknowledge this dilemma, Plaintiff asks this Court for leave to amend Count Four "[t]o the extent the Court may be inclined to grant" Bayview's pending motion to dismiss the CSPA claim. (Doc. 16 at 15). Because Plaintiff's CSPA claim as presently drafted does not appear to fall within the relevant limitations period, the undersigned conditionally recommends that Bayview's motion to dismiss be granted as to that claim, but without prejudice to Plaintiff's right to move to amend that claim within fourteen (14) days of the date of this R&R.

### IV. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT Bayview's motion to dismiss (Doc. 12) be GRANTED in part and DENIED in part.** The motion should be granted as to Plaintiff's breach of contract claim, and conditionally granted as to Plaintiff's

Ohio CSPA claim unless Plaintiff moves to amend that claim within fourteen (14) days of the filing date of this R&R. As to Plaintiff's other two claims, Bayview's motion to dismiss should be denied.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KEITH HAZELWOOD,

    Plaintiff,

v.

BAYVIEW LOAN SERVICING, LLC, et al.,

    Defendants.

Case No. 1:20-cv-726

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).